STATE OF NORTH CAROLINA v. EGAN LARKE TABRON, Defendant

No. COA00-1260

(Filed 20 November 2001)

**Conspiracy— attempted robbery—one conspiracy, two attempts**

There was no error in defendant's first conviction for conspiracy to commit common law robbery, but the second was vacated, where defendant's long-time friend, Burgoin, suggested

STATE v. TABRON

[147 N.C. App. 303 (2001)]

that defendant rob Woodall; there were ongoing conversations between Burgoin, defendant and others about robbing Woodall; the identity of those involved in these conversations was not clearly established; the evidence showed many meetings and discussions of plans that took place over several months; an unidentified group of people including defendant were involved in the actual robbery attempts; and the two robbery attempts were separated in time by about five and one-half weeks. Statements that the participants in the first attempt "went about their business" after the attempt failed and that defendant and his friends thought that Woodall would "make a good hit" if they were down on their luck do not constitute substantial evidence of abandonment of the conspiracy.

Appeal by defendant from judgments entered 11 May 2000 by Judge Henry W. Hight, Jr., in Wake County Superior Court. Heard in the Court of Appeals 11 October 2001.

*Attorney General Roy Cooper, by J. Charles Waldrup, Special Deputy Attorney General, for the State.*

*John T. Hall, for defendant-appellant.*

HUDSON, Judge.

Defendant appeals his convictions of two counts of conspiracy to commit common law robbery. Finding merit in certain of his assignments of error, we vacate the judgment in case number 00 CRS 11878 but find no error as to case number 00 CRS 11877.

At trial, Patton Burgoin testified that she and Phyllis Woodall were once friends, but had a falling out. Burgoin, determined to make trouble for Woodall, reported Woodall's drug activities to the Department of Social Services and the police. When nothing came of these actions, Burgoin approached Defendant, a long-time friend, and suggested that he rob Woodall. Burgoin told Defendant that Woodall kept drugs and a great deal of money at her house. Sometime in the Fall of 1999, Burgoin showed Defendant where Woodall lived and informed him that Woodall would be alone during the day, and that the back door was usually unlocked.

Detective Brad Kennon testified at trial that he learned from interviewing Defendant that Defendant attempted to rob Woodall on 8 December 1999, accompanied by Jonathan Murphy, Gregory Dells,

**STATE v. TABRON**

[147 N.C. App. 303 (2001)]

and Paul Bryant. Defendant waited in the car as a look-out while the other three men went to the house. The three men approached the house from the back and became confused about which house belonged to Woodall. A police car came through the neighborhood, and the men scattered. The four men then "went back about their business."

According to Burgoin, she, Defendant, and others talked about a possible robbery of Woodall weekly after the 8 December attempt had failed. Detective Kennon's interview notes revealed that Defendant and his friends thought that "if they got down on their luck," Woodall's place would "make a good hit."

Both Burgoin and Detective Kennon testified that on 14 January 2000, Defendant tried again to rob Woodall, this time accompanied by Keith Lewis (according to Burgoin, and as listed in the indictments) or Keith Gordon (according to Detective Kennon's testimony and notes) and Defendant's brother, Ronald Tabron. Before the robbery, the men were at Burgoin's house and told her they were going to Woodall's house. Ronald Tabron went up on Woodall's porch, and Defendant and Lewis/Gordon stayed at the bottom of the porch. A child let Ronald Tabron into the house, and Ronald Tabron asked Woodall for drugs. Woodall started screaming, threatened to call the police, and called to her husband. The men ran away, returned to Burgoin's house, and informed her that their attempt had failed.

Defendant was subsequently charged with two counts of conspiracy to commit common law robbery against Woodall and was tried before a jury. After the State rested, Defendant moved to dismiss both conspiracy charges due to insufficiency of the evidence. The trial court denied the motion. The jury returned guilty verdicts on both counts, and Defendant was sentenced to two consecutive terms of not less than ten and not more than twelve months imprisonment. Defendant appeals.

Defendant assigned three errors, which he has combined into one issue on appeal: whether the trial court erred in denying his motion to dismiss one of the conspiracy charges due to insufficient evidence of two separate conspiracies. We agree with Defendant that there was insufficient evidence of two conspiracies.

A trial court's denial of a defendant's motion to dismiss due to insufficiency of the evidence is proper if the State has presented "substantial evidence" of each element of the offense charged. *State*

*v. Graves*, 343 N.C. 274, 278, 470 S.E.2d 12, 15 (1996). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). Substantial evidence may consist of direct or circumstantial evidence, or both. *See State v. Barrett*, 343 N.C. 164, 172, 469 S.E.2d 888, 893, *cert. denied*, 519 U.S. 953, 136 L. Ed. 2d 259 (1996). However, "[i]f the evidence suffices only to raise a suspicion or conjecture that defendant committed the offense, it is insufficient." *State v. Rozier*, 69 N.C. App. 38, 47, 316 S.E.2d 893, 900, *cert. denied*, 312 N.C. 88, 321 S.E.2d 907 (1984). When ruling on a motion to dismiss, a court must consider the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences that can be drawn from the evidence. *See Graves*, 343 N.C. at 278, 470 S.E.2d at 15.

A criminal conspiracy is "an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means." *State v. Bindyke*, 288 N.C. 608, 615, 220 S.E.2d 521, 526 (1975). The State here charged Defendant with conspiring with Paul Bryant, Gregory Dales, and Johnathan Murphy, on or about 8 December 1999, to commit common law robbery against Phyllis Woodall; and with conspiring with Ronnie Tabron and Keith Lewis, on or about 14 January 2000, to commit common law robbery against Phyllis Woodall. Defendant argues that he entered into only one conspiracy with Burgoin to rob Woodall, and that the two separate attempts were in furtherance of this one plot.

In North Carolina, "multiple overt acts arising from a single agreement do not permit prosecutions for multiple conspiracies." *Rozier*, 69 N.C. App. at 52, 316 S.E.2d at 902. "[W]hen the State elects to charge separate conspiracies, it must prove not only the existence of at least two agreements but also that they were separate." *State v. Griffin*, 112 N.C. App. 838, 840, 437 S.E.2d 390, 392 (1993). "There is no simple test for determining whether single or multiple conspiracies are involved: the essential question is the nature of the agreement or agreements, but factors such as time intervals, participants, objectives, and number of meetings all must be considered." *Rozier*, 69 N.C. App. at 52, 316 S.E.2d at 902 (citation omitted). "[A] single conspiracy is not transformed into multiple conspiracies simply because its members vary occasionally, and the same acts in furtherance of it occur over a period of time." *State v. Fink*, 92 N.C. App. 523, 532, 375 S.E.2d 303, 309 (1989).

**STATE v. TABRON**

[147 N.C. App. 303 (2001)]

The State here asserts that there were two conspiracies, both with the same objective. We are not persuaded, however, that the State has presented sufficient evidence of two separate agreements.

The State contends that, taken in the light most favorable to it, the evidence shows that Burgoin was involved in planning the first robbery attempt, but not the second; that the first conspiracy was abandoned; that there were different people involved in the two robbery attempts; that a significant amount of time separated the two robbery attempts; and that many meetings and discussions of plans took place. We agree with all of these contentions, except that we disagree that there is substantial evidence of an abandonment of the conspiracy.

The State argues that the conspiracy was abandoned on the basis of Detective Kennon's testimony that Defendant indicated to him that, after the first robbery attempt was interrupted by the police, the four men "went about their business." The State also argues that Defendant's statement that he and his friends thought Woodall would "make a good hit" if they were down on their luck indicates that the first conspiracy had been abandoned. Although this evidence is not inconsistent with the abandonment of the conspiracy to rob Woodall, it does not constitute substantial evidence of such. Rather, it "suffices only to raise a suspicion or conjecture" that Defendant abandoned an agreement. *Rozier*, 69 N.C. App. at 47, 316 S.E.2d at 900.

The State concedes that after the first robbery attempt, there were ongoing conversations between Burgoin and others about robbing Woodall, and that the identity of those involved in these conversations was not clearly established by the evidence. Thus, in the light most favorable to the State, the evidence shows that there were many meetings and discussions of plans that took place over several months; that an unidentified group of people were involved in these discussions, although different people were involved in the actual robbery attempts; and that the two robbery attempts were separated in time by about five and one-half weeks. On the basis of this evidence, the State would have us infer that two separate agreements were formed to rob Woodall. We conclude that there is no basis for such an inference. *See Fink*, 92 N.C. App. at 532, 375 S.E.2d at 309.

We hold that the evidence presented by the State does not constitute substantial evidence that Defendant entered into two separate conspiracies. Therefore, only the earliest conspiracy con-

viction should stand. Accordingly, we find no error in case number 00 CRS 11877, but we vacate the judgment in case number 00 CRS 11878. *See Griffin*, 112 N.C. App. at 842, 437 S.E.2d at 393.

No error as to 00 CRS 11877.

Vacated as to 00 CRS 11878.

Chief Judge EAGLES and Judge CAMPBELL concur.