An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1319

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

STATE OF NORTH CAROLINA

v.

SHERMAN DEMETRIUS FOWLKES

Wake County
Nos. 11 CRS 223948, 223961-63,
224370-71

Appeal by Defendant from judgments entered 8 February 2013 by Judge Paul C. Ridgeway in Superior Court, Wake County. Heard in the Court of Appeals 17 March 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Brenda Menard, for the State.*
>
> *Parish & Cooke, by James R. Parish, for Defendant.*

McGEE, Judge.

Sherman Demetrius Fowlkes ("Defendant") was indicted on 13 December 2011 for two counts of common law robbery, two counts of robbery with a dangerous weapon, two counts of conspiracy to commit robbery with a dangerous weapon, two counts of felony breaking or entering a motor vehicle, two counts of misdemeanor larceny, and larceny of a firearm. As to the conspiracy

charges, the indictment alleged that Defendant conspired with Winston Washington ("Washington"), Blake Banks ("Banks"), Jerome Jeffries ("Jeffries"), and Ambonisye Kelley ("Kelley").

Jeffries testified at trial that, on the night of 12 October 2011, Defendant called Jeffries to ask him to break into some vehicles with Defendant. Jeffries met with Defendant, Washington, Banks, and Kelley at Defendant's residence at approximately 10:30 or 11:00 p.m. and they left to break into cars. Jeffries was in a silver car the whole night. Defendant drove a red car at times. Jeffries testified that he broke into a vehicle and stole items that were later identified as belonging to Michael Sink. While in the silver car with Kelley and Banks, Jeffries received a phone call from Defendant, asking him to pick him up after Defendant had robbed someone.

Ethan Smith ("Smith") testified that he saw Defendant and four or five other young African American males approaching him in a parking lot at approximately midnight on the evening of 12 October 2011. Smith testified that he was hit from behind and that his belongings were stolen. Kenneth Frederick ("Frederick") testified that five or six males from two vehicles robbed him at gunpoint in the parking lot of his apartment complex sometime between 1:30 and 2:00 a.m. on 13 October 2011. Frederick testified that the gun used in the robbery was a

silver handgun.  He also testified that one of the vehicles was white.

Jeffries also testified that, at some point during the evening, the occupants of the two vehicles met up in a parking lot near N.C. State University.  Shortly thereafter, they robbed John Noble ("Noble"), who was walking back to his car.  Noble testified that he saw a group of five or six young males in a parking lot.  Noble was struck in the head and fell to the ground.  His belongings, including an iPhone and wallet, were stolen.

The group also robbed Alexander Stark ("Stark"), who was riding his bicycle.  Stark testified that a red car pulled up alongside him, and someone jumped out and ran toward him.  The red car and a silver car drove in front of him, and several people exited the vehicles.  Stark was forced to the ground, and his wallet and backpack, which held a laptop, mouse, and cords, were stolen.

Between 3:00 and 3:30 a.m., Claude McMahan ("McMahan") was walking to work at a hotel on Hillsborough Street.  He was knocked out, and his bow tie, nametag, and money were stolen from him.  Jeffries testified that he was present only for the robberies of Noble and Stark.  He testified that he did not

participate in the robbery that occurred after the group separated.

The group reconvened at Defendant's residence. Jeffries left Defendant's residence at approximately 8:00 a.m. with two others. Defendant left in the silver car with the rest of the group. Police officers had tracked Noble's phone to Defendant's residence, and were watching the residence when the group left. Police officers stopped the cars, and Defendant was brought back to his residence. Numerous items identified as having been stolen were located at Defendant's residence. A jury found Defendant guilty of all charges. Defendant appeals.

## I. Standard of Review

Each of Defendant's arguments on appeal arises from the trial court's denial of Defendant's motion to dismiss. Thus, the same standard of review applies to each issue discussed in this opinion. "A trial court's denial of a defendant's motion to dismiss due to insufficiency of the evidence is proper if the State has presented 'substantial evidence' of each element of the offense charged." *State v. Tabron*, 147 N.C. App. 303, 305, 556 S.E.2d 584, 585 (2001).

"Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Substantial evidence may consist of direct or

circumstantial evidence, or both." *Id.* at 306, 556 S.E.2d at 585 (internal citation omitted). "When ruling on a motion to dismiss, a court must consider the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences that can be drawn from the evidence." *Id.* at 306, 556 S.E.2d at 586.

## II. Separate Conspiracies to Commit Robbery with a Dangerous Weapon

Defendant first argues that the "trial court should arrest judgment" on one count of conspiracy to commit robbery with a dangerous weapon where "the evidence did not support two counts of conspiracy to commit robbery with a dangerous weapon[.]" To the extent that this constitutes an argument that the trial court erred in denying Defendant's motion to dismiss, we disagree.

"In North Carolina, multiple overt acts arising from a single agreement do not permit prosecutions for multiple conspiracies." *Tabron*, 147 N.C. App. at 306, 556 S.E.2d at 586 (internal quotation marks omitted). When "the State elects to charge separate conspiracies, it must prove not only the existence of at least two agreements but also that they were separate." *Id.* "[T]he essential question is the nature of the agreement or agreements, but factors such as time intervals,

participants, objectives, and number of meetings all must be considered." *Id.*

In *State v. Roberts*, 176 N.C. App. 159, 167, 625 S.E.2d 846, 852 (2006), this Court considered evidence showing that a conspiracy was formed on the evening of 15 December 2002 when the defendant agreed with two other individuals to rob someone. This Court observed that there "was no evidence that the agreement formed on 15 December 2002 consisted of more than that of robbing someone on that night." *Id.* "The mere fact that the defendant was involved in a similar crime the next night does not indicate the two crimes were committed as part of the agreement made on 15 December 2002." *Id.* This Court held that, "[v]iewing the evidence in the light most favorable to the State, evidence was presented allowing the jury to find that [the] defendant was involved in two separate conspiracies." *Id.*

In the present case, the State presented testimony from Jeffries. At approximately 10:30 or 11:00 p.m. on 12 October 2011, Jeffries met with Defendant and four other individuals, including Banks, Kelley, and Washington. Jeffries testified that Defendant called him to arrange to break into cars that night. Defendant and the four other individuals came to pick up Jeffries from his grandmother's house and returned to Defendant's residence before leaving to break into cars.

Jeffries testified that, when they left Defendant's residence to break into cars, the group split up and travelled in two different vehicles, a red car and a silver car. Jeffries got a phone call from Defendant during which Defendant told Jeffries that Defendant "was fixing to hit somebody." When Jeffries received that phone call, he was in the silver car with Kelley and Banks. Jeffries, Kelley, and Banks drove to another neighborhood to wait for Defendant.

After Defendant joined the occupants of the silver car, they went to "go hit some more cars[.]" They stopped in a parking lot near the campus of N.C. State University and met the occupants of the red car. The occupants of both cars talked as a group. Jeffries testified that he asked for money from a man who walked by; the man said no; Jeffries asked again and handed his gun to Defendant. Defendant ran up to the man and robbed him. Approximately ten or fifteen minutes later, on the campus of N.C. State University, Jeffries and Banks saw a third individual chasing a man on a bicycle. Jeffries and Blake grabbed a book bag from the man on the bicycle and ran back to the silver car.

After this robbery, Jeffries testified that the red car and the silver car became separated. Jeffries testified that he and the occupants of the silver car participated in no more

robberies after this point. An hour and twenty minutes later, all the occupants of the two cars met back at Defendant's residence. Jeffries testified that the group had stolen a "couple GPSs, iPods, cell phones, laptops, [and] the gun." They talked about selling the items at a flea market.

As in *Roberts*, there was no evidence that the agreement formed earlier in the evening at Defendant's residence consisted of an agreement to commit anything other than the next single robbery. The evidence shows ample opportunity for the occupants of the two cars to form separate agreements to commit robberies and for the group as a whole to form a second agreement to commit additional robberies in a parking lot near N.C. State University.

The mere fact that other robberies ensued does not indicate that all the robberies were committed as part of the first agreement. In the present case, the evidence of the group meeting at Defendant's residence, combined with the evidence of the group talking in a parking lot before robbing an individual on foot, indicate more than one conspiracy. Furthermore, the State presented evidence that the group split into two vehicles and were separated for over an hour, during which subsequent agreements could have been reached among the occupants of the red car. Considering this series of events and the variety of

locations and participants, a rational juror could readily find that the evidence established two separate conspiracies, rather than one single conspiracy. *State v. Tirado*, 358 N.C. 551, 578, 599 S.E.2d 515, 534 (2004). Defendant has not shown error on this basis.

### III. Sufficiency of the Evidence of Robbery with a Dangerous Weapon and Conspiracy to Commit Robbery with a Dangerous Weapon of Frederick

Defendant next argues the trial court erred in denying Defendant's motion to dismiss the charges of robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon of Frederick. Defendant contends there was insufficient evidence that Defendant or his co-defendants were the perpetrators of the offenses.

Frederick testified that he was coming home from work at about 1:30 or 2:00 a.m. on 13 October 2011. He parked his vehicle in the parking lot of his apartment complex and noticed that two cars in front of him appeared to be looking for a parking spot. As Frederick walked toward his apartment, "five or six guys jumped out[.]" He testified that one individual held a gun to the back of Frederick's head and demanded money. They took Frederick's wallet, phone, keys, and black hoodie. When Frederick told them he had no money on him, they hit Frederick and ran away.

Defendant contends that Frederick's testimony regarding the color of the vehicle of his assailants "tended to exculpate" Defendant "and therefore [] [D]efendant is entitled to a dismissal of this charge[.]" However, as stated above, in ruling on a motion to dismiss for insufficiency of the evidence, the evidence is viewed in the light most favorable to the State. *Tabron*, 147 N.C. App. at 306, 556 S.E.2d at 586. When considered in conjunction with the testimony of Jeffries regarding how the robberies were planned and executed, the foregoing evidence constitutes sufficient evidence to submit the charges to the jury. The trial court did not err in denying Defendant's motion to dismiss on this basis.

IV. Sufficiency of the Evidence of Common Law Robbery of McMahan

Defendant next argues the trial court erred in denying Defendant's motion to dismiss the charge of common law robbery of McMahan. Defendant concedes that the evidence "clearly established Mr. McMahan was the victim of a common law robbery," but argues there was insufficient evidence that Defendant was a perpetrator of this offense.

Defendant contends that "the doctrine of recent possession creates an inference [Jeffries] and [] Kelley were the thieves[,]" but raised no more than "a conjecture of speculation" that Defendant was one of the offenders. However,

the doctrine of recent possession requires only that a defendant's possession "must be to the exclusion of all persons not party to the crime." *State v. Maines*, 301 N.C. 669, 675, 273 S.E.2d 289, 294 (1981). The possession "'required to support an inference or presumption of guilt need not be a sole possession but may be joint.'" *State v. Osborne*, 149 N.C. App. 235, 240-41, 562 S.E.2d 528, 533, *aff'd per curiam*, 356 N.C. 424, 571 S.E.2d 584 (2002) (quoting *Maines*, 301 N.C. at 675, 273 S.E.2d at 294).

> For the inference to arise where more than one person has access to the property in question, the evidence must show the person accused of the theft had complete dominion, which might be shared with others, over the property or other evidence which sufficiently connects the accused person to the crime or a joint possession of co-conspirators or persons acting in concert in which case the possession of one criminal accomplice would be the possession of all.

*Maines*, 301 N.C. at 675, 273 S.E.2d at 294.

McMahan testified that he was on Hillsborough Street, walking to work at about 3:00 a.m. on the morning of 13 October 2011. As McMahan noticed a person across the street, another person approached him from behind and asked where McMahan was going. McMahan was then "knocked unconscious[.]" Twenty or thirty minutes later, he revived and walked to work. A co-worker commented that it looked like McMahan had been beaten up

and called the police for McMahan. McMahan reported to the police that his bow tie, cellular phone, and about $55 in cash had been stolen from him.

A police officer testified that McMahan's nametag and bow tie were found on 13 October 2011 in the silver vehicle. Jeffries testified that he was not present for the robbery of McMahan on Hillsborough Street. Jeffries did, however, testify that all the individuals returned to Defendant's residence at about 3:00 a.m. on 13 October 2011 and carried all of the stolen items into Defendant's room. It is reasonable to infer that the occupants of the red vehicle committed the robbery of McMahan, and that the items were later transferred to the silver car. Considering the evidence in the light most favorable to the State, the evidence showed a joint possession of McMahan's property by the individuals who acted together to rob McMahan. The trial court did not err in denying Defendant's motion to dismiss these charges.

### V. Sufficiency of the Evidence of Felonious Breaking and Entering a Motor Vehicle, Misdemeanor Larceny, and Larceny of a Firearm of Sink

Defendant next argues the trial court erred in denying Defendant's motion to dismiss the charges of felonious breaking and entering a motor vehicle, misdemeanor larceny, and larceny of a firearm of Sink. Defendant again contends that the

doctrine of recent possession creates an inference Jeffries and Kelley broke in and stole the property.

However, as noted in the previous section, the doctrine of recent possession requires only that a defendant's possession "must be to the exclusion of all persons not party to the crime." *Maines*, 301 N.C. at 675, 273 S.E.2d at 294. Furthermore, the State presented sufficient evidence that Defendant was a perpetrator of these offenses under the theory of aiding and abetting. *See State v. Gaines*, 345 N.C. 647, 676, 483 S.E.2d 396, 413 (1997).

As previously discussed, Jeffries testified that Defendant called him earlier on the night of 12 October 2011 to arrange getting together and breaking into cars. Jeffries testified that he subsequently broke into a vehicle and stole items, including a firearm. Jeffries identified State's Exhibit 3 as a "Springfield," which he stole from the vehicle. Defendant used the firearm in a subsequent robbery close to the campus of N.C. State University, and allowed Jeffries to keep the stolen items in Defendant's residence. Sink testified that, on 13 October 2011, he noticed that his laptop, leather briefcase, firearm, and knife had been stolen from his vehicle. Sink identified State's Exhibit 3 as his stolen firearm.

Considering the evidence in the light most favorable to the State, the State presented sufficient evidence that Defendant was a perpetrator of these offenses under a theory of aiding and abetting. The trial court did not err in denying Defendant's motion to dismiss on this basis.

### VI. Sufficiency of the Evidence of Felonious Breaking and Entering a Motor Vehicle and Misdemeanor Larceny of Keeling

Defendant next argues the trial court erred in denying Defendant's motion to dismiss the charges of felonious breaking and entering and misdemeanor larceny of Keeling. Defendant contends there "could be no application of the doctrine of possession of recent stolen property" because there was no evidence Defendant knew Keeling's iPod Touch "had been placed at [Defendant's] residence by another."

A police officer testified that all of the stolen property was recovered from either Defendant's bedroom or from one of the two vehicles used by Defendant and his co-conspirators. The evidence discussed in the foregoing sections of this opinion indicates Defendant and his co-conspirators had control over and access to all three of these locations. As previously discussed, the possession "required to support an inference or presumption of guilt need not be a sole possession but may be joint." *Osborne*, 149 N.C. App. at 240-41, 562 S.E.2d at 533. Considering the evidence in the light most favorable to the

State, the evidence showed a joint possession of Keeling's property by the individuals who acted together to rob Keeling.

No error.

Chief Judge MARTIN and Judge CALABRIA concur.

Report per Rule 30(e).