An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA 13-1298

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

STATE OF NORTH CAROLINA

v.

Wake County
Nos. 11 CRS 221410;
12 CRS 8966, 11048

TYRECE ANTONIO THOMAS


Appeal by defendant from judgments entered 17 May 2013 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 23 April 2014.

*Attorney General Roy Cooper, by Assistant Attorney General Stuart M. Saunders, for the State.*

*Mergerian & Wells, by Franklin E. Wells, Jr., for Defendant.*

ERVIN, Judge.


Defendant Tyrece Antonio Thomas appeals from judgments entered based upon his convictions for one count of robbery with a dangerous weapon, two counts of attempted robbery with a dangerous weapon, and two counts of conspiracy to commit robbery with a dangerous weapon. On appeal, Defendant contends that the trial court erred by admitting testimony concerning an unrelated alleged robbery; and by denying his motion to dismiss the second

conspiracy to commit robbery with a dangerous weapon charge for insufficiency of the evidence. After careful consideration of Defendant's challenges to the trial court's judgments in light of the record and the applicable law, we conclude that the trial court's judgment stemming from Defendant's second conspiracy to commit robbery with a dangerous weapon conviction should be vacated; that judgment should be arrested in one of Defendant's two convictions for conspiracy to commit robbery with a dangerous weapon; that the case in which the trial court sentenced Defendant based upon his convictions for two counts of conspiracy to commit robbery with a dangerous weapon should be remanded to the Wake County Superior Court for resentencing; and that the trial court's other judgment should remain undisturbed.

## I. Factual Background

### A. Substantive Facts

At approximately 2:00 a.m. on 11 September 2011, John Limbouris, Michael Yahyapour, and Blake Johnson all returned to Mr. Limbouris' apartment after spending several hours at the Five Points Bar and Grill in Raleigh. As part of that process, Mr. Yahyapour rode with Mr. Limbouris back to his apartment, while Mr. Johnson took a cab. Once he had parked his car and exited the vehicle, Mr. Limbouris saw Mr. Johnson, who had arrived a few

minutes before Mr. Limbouris and Mr. Yahyapour, standing near his apartment.

After telling Mr. Yahyapour to hurry up and get out of his car, Mr. Limbouris turned around, looked up, and saw two men running towards him. Although Mr. Limbouris yelled at the two men as they approached, the two men continued to charge towards him while brandishing firearms.

Mr. Limbouris and Mr. Yahyapour described one of the two men, later identified as Antonio Freeman, as a "taller, lankier, sinewy looking fellow" who was approximately six feet, two inches tall[1] and described the other man, later identified as Defendant, as weighing about 200 pounds and being about five feet, seven inches, or five feet, eight inches tall.[2] According to both Mr. Limbouris and Mr. Yahyapour, the taller man was carrying a gun with a longer barrel, while Mr. Limbouris indicated that the shorter man was carrying a smaller handgun. Both men wore dark clothes and had

---

[1]Mr. Freeman, who testified for the State, pled guilty to one count of robbery with a dangerous weapon, one count of conspiracy to commit robbery with a dangerous weapon, and two counts of attempted robbery with a dangerous weapon pursuant to a negotiated plea under which all of his convictions were to be consolidated for judgment. Mr. Freeman had not been sentenced as of the date of Defendant's trial.

[2]The identifications described in the text were made by Mr. Freeman. The victims never identified Defendant as one of the perpetrators of the robbery.

covered half of their faces with bandannas, and the taller man also wore a black toboggan.

As the two men neared Mr. Limbouris, Mr. Yahyapour, and Mr. Johnson, the taller man approached Mr. Yahyapour while the shorter man approached Mr. Limbouris. At that point, Mr. Johnson was farther from the two armed men at a point near the apartment building and facing away from Mr. Limbouris and Mr. Yahyapour. Upon reaching Mr. Limbouris, Mr. Yahyapour, and Mr. Johnson, the two armed men told them to take their wallets and all of the other items in their possession out of their pockets.

As the robbery occurred, Mr. Johnson phoned 911. Before the police could arrive, however, Mr. Yahyapour removed his Zelli brand wallet, which contained debit, credit, and identification cards, and threw it in the direction of the armed men. On the other hand, Mr. Limbouris refused to surrender his wallet. After the taller man retrieved Mr. Yahyapour's wallet, the two armed men ran back down the street toward Fred Fletcher Park.

Mr. Limbouris pursued the robbers at a safe distance. As he did so, Mr. Limbouris saw a black Dodge Nitro driving around a nearby parking lot. As a result, Mr. Limbouris stopped following the robbers at a point about 50 yards from Fred Fletcher Park and focused his attention on the Nitro.

A few minutes after the robbery, Sergeant Tracy Turner and Officer Julie Pearson of the Raleigh Police Department arrived at the scene. As she took a statement from Mr. Limbouris, Officer Pearson saw a Dodge Nitro. Although Officer Pearson remained at the scene of the robbery to finish taking statements from Mr. Limbouris, Mr. Yahyapour, and Mr. Johnson, Sergeant Turner pursued the Dodge Nitro and stopped it on a bridge about a half a mile from Mr. Limbouris' apartment. At the time that Sergeant Turner stopped the Dodge Nitro, Korey Ford was operating the vehicle and Javonte Goode was sitting in the passenger seat.[3]

After taking statements from Mr. Limbouris, Mr. Yahyapour, and Mr. Johnson, Officer Pearson drove the three victims past the Dodge Nitro in an attempt to ascertain if any of them could identify the occupants of the vehicle. As Officer Pearson's patrol vehicle drove past the Dodge Nitro, the occupants saw a tall man with dreadlocks and a shorter man. Although neither Mr. Limbouris, Mr. Yahyapour, nor Mr. Johnson identified the taller man as one of the perpetrators of the robbery, the shorter man fit the description of the short man from the robbery incident. According to Mr. Ford and Mr. Goode, Mr. Freeman and Defendant,

---

[3]Both Mr. Ford, who had been acquitted of involvement in the robbery, and Mr. Goode, who had been promised that he would not be prosecuted in the event that he provided truthful testimony, testified for the State.

who had been in Mr. Ford's car earlier in the night, had gotten out shortly before the robbery without telling either Mr. Ford or Mr. Goode that they had any intention of engaging in criminal activity.[4]

After leaving the scene of the robbery and being unable to reunite with Mr. Ford, Defendant and Mr. Freeman ran toward and eventually hid in Fred Fletcher Park. From that location, they could see that the police had stopped the Dodge Nitro. As a result, they left their guns, which were concealed in items of clothing, in a flower bed in the park. On 11 September 2011, Kathryn Bauman-Hill found two firearms in Fred Fletcher Park while attending a picnic and reported her discovery to investigating officers. Upon responding to Ms. Bauman-Hill's call, investigating officers discovered a loaded Ruger .22 caliber pistol and a loaded Phoenix .25 caliber pistol. Although Mr. Freeman's DNA was found on certain of the items recovered from Fred Fletcher Park, none of Defendant's fingerprints or DNA was found on any of those items.

## B. Procedural History

On 11 September 2011, a warrant for arrest charging Defendant with robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon was issued. On 24 October 2011,

---

[4]Mr. Ford, Mr. Freeman, Mr. Goode, and Defendant had all attended Saint Augustine's College together.

the Wake County grand jury returned a bill of indictment charging Defendant with robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon.  On 26 November 2012, the Wake County grand jury returned bills of indictment charging Defendant with two counts of attempted robbery with a dangerous weapon and two counts of conspiracy to commit robbery with a dangerous weapon.

The charges against Defendant came on for trial before the trial court and a jury at the 15 May 2013 criminal session of the Wake County Superior Court.  At the conclusion of all the evidence, the State voluntarily dismissed one of the three conspiracy to commit robbery with a dangerous weapon charges.  On 17 May 2013, the jury returned verdicts finding Defendant guilty of one count of robbery with a dangerous weapon, two counts of attempted robbery with a dangerous weapon, and two counts of conspiracy to commit robbery with a dangerous weapon.  At the conclusion of the ensuing sentencing hearing, the trial court consolidated Defendant's convictions for robbery with a dangerous weapon and two counts of attempted robbery with a dangerous weapon for judgment and sentenced Defendant to a term of 51 to 71 months imprisonment based upon those convictions and consolidated Defendant's convictions for two counts of conspiracy to commit robbery with a dangerous weapon for judgment and sentenced

Defendant to a consecutive term of 24 to 38 months imprisonment based upon those convictions. Defendant noted an appeal from the trial court's judgments.

## II. Legal Analysis

## A. Admission of Prior Bad Act Evidence

In his first challenge to the trial court's judgment, Defendant argues that the trial court erred by admitting testimony concerning a robbery that took place on the night before the incident at issue in this case. More specifically, Defendant contends that evidence of the earlier robbery was irrelevant, did not involve an incident that was sufficiently similar to the incident at issue in this case, and had an unfairly prejudicial effect that outweighed any probative value that the evidence in question might possess. We do not find Defendant's arguments persuasive.

## 1. Relevant Facts

At trial, the State elicited evidence from Mr. Freeman and Claudio Castro concerning an incident that occurred on 10 September 2011. According to Mr. Freeman, he and Defendant were in a difficult financial situation on 10 September 2011. As a result, the two men decided to rob people who were coming home after a weekend night out. As a result of their belief that Defendant's vehicle was too conspicuous and the fact that Mr.

Freeman did not own a car, Defendant and Mr. Freeman rode in Mr. Ford's Dodge Nitro on this occasion.

As Mr. Castro and two friends returned to his apartment complex on the early morning of 10 September 2011 after spending several hours at a friend's birthday party, two men, whom Mr. Freeman identified as Defendant and himself, approached the group, which included Mr. Castro, armed with guns and wearing dark clothes, beanies, bandannas, and gloves; pointed their guns at Mr. Castro and his two friends; and demanded that they hand over their wallets and cell phones. Although Mr. Castro initially refused to give up his cell phone until one of the robbers threatened to shoot him, Mr. Castro and his friends eventually relinquished their wallets and phones. The armed men grabbed the wallets and phones that had been surrendered by Mr. Castro and his friends and ran to Mr. Ford's Dodge Nitro, which drove away.[5] Mr. Freeman, Mr. Ford, and Defendant split the money that they found in the wallets taken from Mr. Castro and his friends.

After allowing the admission of evidence concerning the 10 September 2011 robbery, the trial court instructed the jury that:

> Evidence has been received which you, the jury, may find tends to show that on September 10, 2011, the Defendant and an alleged coconspirator robbed other victims. This evidence was received solely for the purpose

---

[5]According to Mr. Freeman, Mr. Goode was not present during the 10 September 2011 incident.

> of showing that the Defendant had a motive for the commission of the crime charged in this case, and that there existed in the mind of the Defendant a plan, scheme, system, or design involving the crime charged in this case. If you believe the evidence -- if you believe this evidence, you may consider it, but only for the limited purpose for which it was received. You must not consider it for any other purpose.

According to Defendant, the trial court erred by allowing the admission of this evidence.

## 2. Standard of Review

> [W]hen analyzing rulings applying [N.C. Gen. Stat. § 8C-1,] Rules 404(b) and 403, we conduct distinct inquiries with different standards of review. When the trial court has made findings of fact and conclusions of law to support its [N.C. Gen. Stat. § 8C-1, Rule] 404(b) ruling . . .[,] we look to whether the evidence supports the findings and whether the findings support the conclusions. We review de novo the legal conclusion that the evidence is, or is not, within the coverage of [N.C. Gen. Stat. § 8C-1,] Rule 404(b). We then review the trial court's [N.C. Gen. Stat. § 8C-1,] Rule 403 determination for abuse of discretion.

*State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quotation omitted). An "[a]buse of discretion [occurs] where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result

of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988); *see also White v. White*, 312 N.C. 770, 777, 324 S.E.2d, 829, 833 (1985).

### 3. Admissibility of Testimony Concerning Other Robbery

According to N.C. Gen. Stat. § 8C-1, Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith," but may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." As the Supreme Court has noted, N.C. Gen. Stat. § 8C-1, Rule 404(b) is a

> general rule of inclusion of relevant evidence of other crimes, wrongs, or acts by a defendant, subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Coffey*, 326 N.C. 268, 278-279, 389 S.E.2d 48, 54 (1990). As a result, any evidence properly admitted pursuant to N.C. Gen. Stat. § 8C-1, Rule 404(b), "'must be offered for a proper purpose, must be relevant, [and] must have probative value that is not substantially outweighed by the danger of unfair prejudice to the defendant[.]'" *State v. Mohamed*, 205 N.C. App. 470, 486-87, 696 S.E.2d 724, 736 (2010) (quoting *State v. Haskins*, 104 N.C. App.

675, 679, 411 S.E.2d 376, 380 (1991), *disc. review denied*, 331 N.C. 287, 417 S.E.2d 256 (1992)).

The admissibility of evidence proffered pursuant to N.C. Gen. Stat. § 8C-1, Rule 404(b), "is constrained by the requirements of similarity and temporal proximity." *State v. Carpenter*, 361 N.C. 382, 388, 646 S.E.2d 105, 110 (2007). In light of that fact, "'[t]he ultimate test for determining whether such evidence is admissible is whether the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of [N.C. Gen. Stat.] § 8C-1, Rule 403.'" *State v. Davis*, 340 N.C. 1, 14, 455 S.E.2d 627, 634 (quoting *State v. Boyd*, 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988)), *cert. denied*, 516 U.S. 846, 116 S. Ct. 136, 133 L. Ed. 2d 83 (1995). "Prior crimes or acts by the defendant are deemed similar when there are 'some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both[.]'" *State v. Brockett*, 185 N.C. App. 18, 22, 647 S.E.2d 628, 632 (quoting *State v. Moore*, 309 N.C. 102, 106, 305 S.E.2d 542, 545 (1983)), *disc. review denied,* 361 N.C. 697, 654 S.E.2d 483 (2007). The similarities between the crime charged and admissible "other bad act" evidence need not, however, "rise to the level of the unique or bizarre." *State v. Green*, 321 N.C. 594, 604, 365 S.E.2d 587, 593, *cert. denied*, 488 U.S. 900,

109 S. Ct. 247, 102 L. Ed. 2d 235 (1988). As a result, the ultimate issue raised by Defendant's challenge to the admission of evidence concerning the 10 September 2011 incident hinges upon the extent, if any, to which the 10 September and 11 September 2011 incidents were similar in nature and proximate in time.

According to Defendant, the evidence provided by Mr. Castro and Mr. Freeman concerning the 10 September 2011 robbery should not have been admitted because the events that occurred at the time of the 10 September and 11 September 2011 incidents were not sufficiently similar. In support of this contention, Defendant notes that the two incidents occurred on opposite sides of town and involved different sets of participants. In concluding that evidence of the 10 September 2011 incident was admissible for the purpose of showing a common plan, intent, and motive, however, the trial court found that only one day elapsed between the two incidents, that the two incidents occurred at approximately the same time of day, that the geographic location at which the two incidents occurred was not significantly dissimilar, and that the two incidents involved the use of a similar *modus operandi*, under which the perpetrators, who were both armed, robbed college-aged individuals late on a weekend night in or around the parking area in an apartment complex while wearing dark clothing on their bodies and bandannas on their faces and giving similar commands.

As a result of the substantial similarities between the 10 September and 11 September 2011 incidents, we have no hesitation in concluding that the trial court correctly determined that evidence concerning the 10 September 2011 incident tended to show the existence of a common scheme or plan involving Defendant and Mr. Freeman and was, for that reason, relevant to an issue other than Defendant's propensity to engage in unlawful conduct.

In addition, Defendant contends that, even if testimony concerning the 10 September 2011 incident was relevant for a purpose other than showing Defendant's propensity to engage in unlawful conduct, the "probative value" of evidence concerning that incident was "substantially outweighed by the danger of unfair prejudice" and should have been excluded pursuant to N.C. Gen. Stat. § 8C-1, Rule 403. A decision to admit or exclude evidence pursuant to N.C. Gen. Stat. § 8C-1, Rule 403, is, as we have already noted, committed to "the sound discretion of the trial court, whose ruling will be reversed on appeal only when it is shown that the ruling was so arbitrary that it could not have resulted from a reasoned decision." *State v. Bidgood*, 144 N.C. App. 267, 272, 550 S.E.2d 198, 202, *cert. denied*, 354 N.C. 222, 554 S.E.2d 648 (2001). In the course of considering Defendant's objection to the admission of the challenged evidence, the trial court engaged in the balancing inquiry required by N.C. Gen. Stat.

§ 8C-1, Rule 403, and specifically determined that the probative value of the challenged evidence outweighed any risk of unfair prejudice that would result from its admission. In addition, as this Court has clearly held, the delivery of a limiting instruction like that quoted above mitigates the risk that the jury will consider "other bad act evidence" for an impermissible purpose during the course of its deliberations. *State v. Stevenson*, 169 N.C. App. 797, 802, 611 S.E.2d 206, 210 (2005); *see also State v. Hyatt*, 355 N.C. 642, 662, 566 S.E.2d 61, 74-75 (2002) (holding that the admission of "other bad act" evidence did not unfairly prejudice the defendant for the purposes of N.C. Gen. Stat. § 8C-1, Rule 403, given the delivery of an instruction limiting the purposes for which the jury was entitled to consider the evidence in question), *cert. denied*, 537 U.S. 1133, 123 S. Ct. 916, 154 L. Ed. 2d 823 (2003). In view of the significant similarities between the two incidents and the limiting instruction delivered by the trial court, we see no basis for concluding that the trial court abused its discretion by failing to exclude the testimony of Mr. Castro and Mr. Freeman concerning the 10 September 2011 robbery pursuant to N.C. Gen. Stat. § 8C-1, Rule 403. As a result, the trial court did not err by allowing the admission of evidence concerning the 10 September 2011 incident.

### B. Sufficiency of the Evidence to Support Multiple Conspiracy Charges

Secondly, Defendant contends that the trial court erred by denying his motion to dismiss one of the two conspiracy to commit robbery with a dangerous weapon charges that had been lodged against him based upon insufficiency of the evidence. In support of this contention, Defendant argues that the State's evidence failed to show the existence of two distinct agreements to commit robbery with a dangerous weapon and, instead, simply established the existence of a single conspiracy. As the State candidly concedes, Defendant's contention has merit.

According to well-established North Carolina law, a defendant's motion to dismiss is properly denied if "'there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.'" *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). In conducting the required analysis, the "trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor." *State v. Miller*, 363 N.C. 96, 98, 678 S.E.2d 592, 594 (2009). We review the trial court's denial of a motion to dismiss for insufficiency of the

evidence using a *de novo* standard of review.  *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

"A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means."  *State v. Bindyke*, 288 N.C. 608, 615, 220 S.E.2d 521, 526 (1975).  When the evidence shows a series of agreements or acts constituting a single conspiracy, the constitutional prohibition against double jeopardy bars the State from prosecuting a defendant on multiple conspiracy indictments. *State v. Medlin*, 86 N.C. App. 114, 121, 357 S.E.2d 174, 178 (1987) (citing *United States v. Kissel*, 218 U.S. 601, 31 S. Ct. 124, 54 L. Ed. 1168 (1910)).  As a result, "when the State elects to charge separate conspiracies, it must prove not only the existence of at least two agreements but also that they were separate." *State v. Griffin*, 112 N.C. App. 838, 840, 437 S.E.2d 390, 392 (1993) (citing *State v. Rozier*, 69 N.C. App. 38, 53, 316 S.E.2d 893, 902, *cert. denied*, 312 N.C. 88, 321 S.E.2d 907 (1984)). Although there is no simple test for use in determining whether a particular case involves a single conspiracy or multiple conspiracies, "factors such as time intervals, participants, objectives, and number of meetings all must be considered." *Rozier*, 69 N.C. App at 52, 316 S.E.2d at 902.[6]

---

[6]In addition to *Rozier*, Defendant cited *State v. Dalton*, 122

A careful review of the record evidence provides no basis for a determination that Defendant and Mr. Freeman were involved in multiple conspiracies at the time that they robbed Mr. Limbouris, Mr. Yahyapour, and Mr. Johnson. Instead, the record indicates that, given their financial difficulties, Defendant and Mr. Freeman decided to rob individuals returning home late on a weekend night. As a result, they approached the victims as they returned to Mr. Limbouris' apartment, robbed or attempted to rob the three men at the same time, and escaped together. In light of this evidence, we believe that, even when taken in the light most favorable to the State, the record did not suffice to establish the existence of more than one conspiracy. As a result, as the State concedes, the trial court erred by denying Defendant's motion to dismiss one of the two conspiracy to commit robbery with a dangerous weapon charges of which he was convicted, requiring us to vacate the trial court's judgment in the case in which Defendant was sentenced for two counts of conspiracy to commit robbery with a dangerous weapon, arrest judgment with respect to

N.C. App 666, 672-73, 471 S.E.2d 657, 662 (1996); *State v. Medlin*, 86 N.C. App. 114, 121-23, 357 S.E.2d 174, 178-79 (1987); and *State v. Tabron*, 147 N.C. App. 303, 306-08, 556 S.E.2d 584, 586-87 (2001), *disc. review improvidently granted*, 356 N.C. 122, 564 S.E.2d 881 (2002), all of which held that the State's evidence only established the existence of a single conspiracy, in support of his challenge to the denial of his dismissal motion concerning the sufficiency of the evidence to support one of his two conspiracy convictions.

one of those convictions, and resentence Defendant based upon a single conviction for conspiracy to commit robbery with a dangerous weapon.[7]

### III. Conclusion

Thus, for the reasons set forth above, we conclude that Defendant's challenge to the trial court's judgment in the case in which Defendant was convicted of robbery with a dangerous weapon and two counts of attempted robbery with a dangerous weapon and his challenge to his convictions for two counts of conspiracy to commit robbery with a dangerous weapon lack merit and that the trial court erred by failing to grant Defendant's motion to dismiss one of the two counts of conspiracy to commit robbery with a dangerous weapon for insufficiency of the evidence. As a result, the trial court's judgment based upon Defendant's convictions for robbery with a dangerous weapon and two counts of attempted robbery with a dangerous weapon should, and hereby does, remain undisturbed and the trial court's judgment based upon Defendant's conviction for two counts of conspiracy to commit robbery with a dangerous weapon should be, and hereby is vacated; judgment should be, and hereby is, arrested in one of the two

---

[7]As a result of the fact that the State voluntarily dismissed the conspiracy to commit robbery with a dangerous weapon charge set forth in the indictment returned in File No. 11 CrS 221410, judgment should be arrested in connection with the conspiracy to commit robbery with a dangerous weapon charge set forth in the second count of the indictment returned in File No. 12 CrS 11048.

cases in which Defendant was convicted of conspiracy to commit robbery with a dangerous weapon; and this case should be, and hereby is, remanded to the Wake County Superior Court for resentencing based upon a single conviction, rather than multiple convictions, for conspiracy to commit robbery with a dangerous weapon.

NO ERROR IN PART, VACATED IN PART, AND REMANDED FOR RESENTENCING IN PART.

Judges GEER and STEPHENS concur.

Report per Rule 30(e).